William Guichard, an Infant, by Augustine L. Guichard, his Guardian ad Litem, Appellant, v. Jacob New, Respondent.

*Damages for personal injuries — elevator gates — prudence and judgment required of an infant sui juris — damages recovered by a trespasser.*

Sliding gates, three feet in height, placed by the side of an elevator shaft on a landing, cannot be held, as a matter of law, to have been fully adequate for the protection of passengers in the elevator.

If, on the trial of an action brought to recover damages for personal injuries arising from the alleged negligence of the owner of the building in which such elevator is operated, it be shown that the danger to be apprehended from such low gates was brought home to such owner, a question is presented for the determination of the jury as to whether such a construction was proper and safe,

and was a compliance with the provisions of section 28 of chapter 275 of the Laws of 1892.

An infant, although *sui juris* and thus chargeable with his own negligence which contributes to his injury, is not to be held to the same standard of prudence and judgment as a man of mature years and experience, and an act of such child, although contributing to his injury, if not under all the circumstances negligent, will not prevent a recovery of damages for the injuries which he has sustained.

It is not the contributing act but contributory negligence that defeats recovery.

The fact that a person who has sustained personal injuries, while in a building belonging to another, was technically a trespasser, will not, as a matter of law, preclude a recovery of damages from the owner for the injuries he has sustained.

APPEAL by the plaintiff, William Guichard, an infant, by Augustine L. Guichard, his guardian *ad litem,* from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 27th day of October, 1893, upon the dismissal of the complaint directed by the court after a trial before the court and a jury at the New York Circuit, and also from an order made on the 23d day of October, 1893, and entered in said clerk's office denying the plaintiff's motion for a new trial made upon the minutes.

*G. E. Waldo,* for the appellant.

*Charles C. Nadal,* for the respondent.

O'BRIEN, J.:

This action is brought to recover damages for injuries sustained by the plaintiff. On September 13, 1892, the defendant was the owner of premises on South Fifth avenue in this city, which were a five-story building rented in floors to manufacturers, some of whom employed a large number of hands, among them young girls. At the rear of the hallway in the building is an elevator, used for both freight and passengers, very little of the former being carried thereon, it having been mostly used for passengers. The elevator faces the street and is plainly visible therefrom. On each floor at the opening into the elevator shaft there was an automatic wooden gate three feet high, which slid up and down like a window, and a gate of the same construction guarded the shaft at the street floor. Attached to and on the elevator car was a flexible iron gate, which

FIRST DEPARTMENT, JANUARY TERM, 1895.          [Vol. 84.

was open at the time of the accident, and was so rusted that it could not be closed.   Between the wooden gate on the landing and the iron gate on the car there was a space of two and one-half inches; and between the top of the iron gate on the car and the iron bar at the top of the car there was a space of about ten inches.

On the date mentioned the appellant, then an infant eight years and seven months of age, and about four feet two inches in height, was playing on the sidewalk in front of the adjoining building. The man employed to run the elevator for respondent called the boy inside the door of the hallway and told him to get a pitcher and get a pint of beer, to pay for which he gave the boy ten cents. The boy went home for a pitcher, and thence across the street to a saloon, where he got the beer and returned to the premises and gave it to the elevator man in the front part of the hall. The latter requested him to go up on the third floor with him on the elevator, which he did. There they got off, stayed just long enough for the elevator man to drink the beer, and then both got on again and went down to the first or street floor, where the boy got off and started towards the street. The elevator man shut the wooden gate and started the car down towards the basement. The boy, after having gone a little way towards the street door, returned to the elevator shaft and, seeing the elevator moving down and the shaft gate closed, looked over, and at the same time asked the elevator man where he was going; but before he got an answer the top iron cross bar or frame of the elevator caught on the top of the boy's head, tore his scalp completely off, and otherwise injured seriously his face, teeth and head.

It appeared that the boy had played frequently in front of the entrance to the premises, knew of the existence and position of the elevator, but had never been in it nor in the hallway before, and had never spoken to the elevator man, nor the latter to him, prior to the day of the accident. In addition to plaintiff's witnesses, tenants in the building were examined, who testified to the condition of the elevator and the rusty condition of the gate on the car which prevented its closing, and also that they had notified the defendant of the danger which they apprehended from such conditions and from the low gates on the landings that guarded the elevator shaft. Upon such testimony, supplemented by chapter 275 of the Laws of 1892 (§ 28), which requires that elevator shafts similar to the one in

question "shall be provided with and protected by a substantial guard or gate," the plaintiff relied for a recovery.

At the close of plaintiff's case a motion to dismiss the complaint was made, placed upon three grounds: (1) That no negligence on defendant's part was shown; (2) that no evidence that plaintiff was free from contributory negligence was given, but, on the contrary, the evidence was that plaintiff himself contributed to the injury; and (3) that plaintiff was a trespasser on the premises, or at most was there by mere sufferance, and thus assumed the conditions as they existed there, the defendant owing him no special duty. The learned trial judge granted the motion upon the two latter grounds assigned, viz., the absence of evidence showing plaintiff's freedom from contributory negligence, and that for the reason that the accident happened after the boy had quit the elevator to go to the street, the defendant could not be held responsible. We might confine our attention, therefore, to these grounds; but, as the other question, of the absence of any negligence on the part of the defendant, is also urged to support the judgment, it will be necessary to refer briefly to the three grounds upon which the motion was made.

*First.* Was there sufficient evidence to submit to the jury the question of whether or not the defendant was negligent? As stated, the construction and use of the elevator and shaft was not that of a hoistway, but of a passenger elevator with a close-fitting car, so that the slightest projection of a person's head or limbs into the shaft would be dangerous, the distance between the iron bar at the top of the car and the wooden gate at the landing being but two and a half inches. To prevent injury to those in the car from the projection of their persons, as well as to prevent their getting on or off while the car was in motion, a flexible iron gate was provided. On account of the rust this was not in a condition at the time of the accident to be closed, and, so far as appears, had not been used for some time prior thereto. It is true that the boy was not injured while on the car, but while on the landing: but there is something in the suggestion made by one of the witnesses, who testified: "There are prongs go up from this iron gate, and those prongs slip through the iron bar on the top of the car. If this gate had been shut, that iron frame couldn't have caught the boy's head unless he put it in between the top of the gate and this bar. In that case his

face would have struck that if he had put his head over the gate."
According to this witness, if the flexible gate of the car had been
closed, the projection of the boy's head over the low wooden gate
on the landing would have brought his face against the gate of the
car, unless he happened to run his head in the space (assuming the
gates to be closed) that would be left between the top of the gate
and the iron bar at the top of the car, which, as testified to by one
of the witnesses, was about eight inches.

Apart, however, from this, considering the character of the con-
struction of the sliding gate on the landing, which was only three
feet high, and which cannot be held as a matter of law to have been
fully adequate for the protection of the passengers, coupled with
the fact that the danger to be apprehended from this low gate was
brought home to the defendant, we think a question was presented
as to whether such a construction was proper and safe, and a com-
pliance with the statute, and upon this branch as to defendant's
negligence, there was sufficient evidence to go to the jury.

Upon the second ground, that there is no evidence that the plain-
tiff was free from contributory negligence, there was sufficient upon
which the learned judge should have submitted this also to the jury.
It has been frequently held that an infant, although *sui juris*, and
thus chargeable with his own negligence which contributed to his
injury, is not to be held to the same standard of prudence and judg-
ment as a man of mature years and experience. In *O'Mara* v.
*Hudson River R. R. Co.* (38 N. Y. 449) the court says: "It is to
be considered, also, that the deceased was a lad eleven and a half
years old, to whom greater indulgence should be extended than to
an adult. He was of that age that he was quite fit to be trusted
with the care of his own person in the streets of a country village,
and yet it is not probable that he would exercise as much prudence and
caution as would an adult. * * * The young are entitled to the
same rights, and cannot be required to exercise as great foresight
and vigilance as those of maturer years. More care toward them is
required than toward others. In the case of a child of but two or
three years of age, no knowledge or foresight could be expected.
This an engineer is bound to know, and if the child is within his
view, to act accordingly. In a case like the present, that of a boy
eleven and a half years of age, the jury were not bound to require

the same demureness and caution as in the case of an older person."
(See, also, *McGovern* v. *N. Y. Cen. & H. R. R. R. Co.*, 67 N. Y.
421; *Byrne* v. *Same*, 83 id. 621; *Wendell* v. *Same*, 91 id. 420;
*Brown* v. *City of Syracuse*, 77 Hun, 411.)

No doubt, as urged by the respondent, the act of the boy in put-
ting his head over the gate to call to the elevator man contributed
to the injury. But an act, though contributory to the injury, if not,
under all the circumstances appearing, negligent, would not prevent
a recovery. In other words, it is not the contributing act, but con-
tributory negligence, that defeats recovery; and this distinction has
been pointed out in the case of *Schmidt* v. *Cook* (30 Abb. N. C.
285–290).

We do not think, therefore, as a matter of law, it could be held
that a child of the age of the appellant, who was injured in the
manner described, was guilty of contributory negligence which
would bar a recovery, but upon the facts here appearing that ques-
tion should have been submitted to the jury.

The final ground, that after the boy had left the elevator for the
purpose of returning to the street the defendant owed him no obli-
gation, does not seem to us to be tenable. That the boy was not a
trespasser appears from the fact that he was invited upon the
premises by the elevator man, who used him in doing an errand; and,
in the absence of express rules to the contrary, there was nothing
wrongful in sending the boy upon a message. If, instead of send-
ing him for beer, the elevator man had sent him for food or for
water to quench his thirst, we do not think, unless there was a rule
of the defendant forbidding his employees sending a boy on such
an errand, that it would be wrongful in him to do so. There is no
prohibition against a workman having a pint of beer with which to
quench his thirst, any more than there is against his having food or
water; nor is there sufficient in the fact that it was beer instead of
either food or water to justify the conclusion that the boy while on
the premises, where he had been brought by the invitation of one
having the apparent right to do so, was a trespasser. By this, we
do not mean to hold that the one who sends the boy, or the one
who sells the beer to him, may not do wrong, but only that the boy's
status, by the mere fact of going, is not changed from a rightful
into a wrongful one. It is unnecessary, however, for us to determine

just what the boy's status was, because, even if technically a tres-
passer, it would not as a matter of law preclude a recovery.    But we
do not think he could be regarded, even technically, as a trespasser.

Upon all the testimony, as inferences favorable to the plaintiff
upon all the grounds could have been drawn, and as it cannot be
said as a matter of law that any, or all, should have been resolved
in defendant's favor, we think it was error to dismiss the complaint,
and for such error the judgment should be reversed and a new trial
ordered, with costs to appellant to abide the event.

VAN BRUNT, P. J., and PARKER, J., concurred.

Judgment reversed, new trial ordered, costs to appellant to
abide event.