are assumed by those who consent to accept employment under such circumstances. But those dangers which are known, and can be mitigated or avoided by the exercise of reasonable care and precaution on the part of those carrying on the business, and injuries from which happen through neglect to exercise such care, are not incident to the business, and the master is generally liable for damages occurring therefrom." The injury in this case came from the neglect to exercise care in avoiding a danger known to the master, and which could have been easily avoided, and which affected a place furnished to the servant to work in. For such neglect the master is liable, under settled and well-established rules. The case was submitted to the jury in a charge remarkably favorable to the defendant, and containing no errors available to it. The damages are not claimed to be excessive, and the judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur.

---

(59 App. Div. 114.)

### FOGARTY v. BOGERT.

(Supreme Court, Appellate Division, Second Department. March 8, 1901.)

NEGLIGENCE—UNSAFE PREMISES—INJURIES—QUESTION FOR JURY.

Plaintiff, seeing a sign "Flat to Let," and desiring to hire one, rang the basement bell of the premises for the purpose of making inquiries, after dark. A person opened a window, and, turning towards such window, plaintiff fell down an unguarded cellar way, of which she was ignorant. The sign notified persons to call at another place, but plaintiff did not see such notice. *Held*, in an action against the owner, that, though the notice to inquire at another place was not an invitation to apply on the premises, it was error to dismiss the complaint, since, as the owner had constructed a doorway and bell apparently for general use, he owed a duty of exercising some care to render the premises reasonably safe for one calling for a legitimate purpose, and it was for the jury to say whether such care had been exercised.

Appeal from trial term, Kings county.

Action for injuries by Margaret Fogarty against Seba M. Bogert. From a judgment dismissing the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Stephen B. Jacobs (Richard A. Rendich, on the brief), for appellant.
Frank G. Wild, for respondent.

HIRSCHBERG, J. The first trial of this case resulted in a dismissal of the complaint, but the judgment entered thereon was reversed by this court. Fogarty v. Bogert; 43 App. Div. 430, 60 N. Y. Supp. 81. It then appeared that the plaintiff, seeing a sign upon the house No. 28 First place, in the borough of Brooklyn, "Flat to Let," and desiring to hire a flat, rang the basement bell of the premises for the purpose of making inquiries. The basement gate is under the stoop, and is reached by a flagged walk skirting a grass plot, and terminating with two steps (down) to a stone platform, $40\frac{1}{2}$ inches

square. Standing on this platform, and facing the basement gate and bell, the house is to the left, and immediately behind is a flight of stone steps leading to the cellar, and unguarded. There is a window, the greater portion of which is directly over these steps. When the plaintiff pulled the bell on the night in question this window was raised by a servant of one of the occupants of the building, and, turning to communicate with her, the plaintiff was at once pitched down the cellar steps, and injured.

The first nonsuit was reversed because the display of the notice mentioned "by a houseowner upon the premises, in the absence of any direction therein to apply elsewhere, constitutes an implied invitation to persons desiring such apartments to apply there for information concerning the rooms thus offered for rent," and therefore the plaintiff was to be "regarded as having properly gone, at the invitation of the defendant, to the basement gate of the defendant's apartment house." In this connection, Mr. Justice Bartlett said: "It may be that the case will present a different aspect when the defense is put in. For example, an invitation to come upon the premises could hardly be predicated of the display of a notice which directed persons desiring to hire flats to apply at some other address." On this trial it was proven that the notice contained the words, "Flat to Let. Apply to Bergen & Son, 314 Court street." These were in "large dark letters," excepting that the words "Apply to" were in letters only half the size of the others. The plaintiff testified that all she saw, however, was the words "Flat to Let," and, knowing that in that vicinity the janitors generally live in the basement, she applied there, rather than at the front door on the stoop. She says it was dark, but she found the bell pull by feeling. There was an electric light in the street in front of the adjoining premises, but the evidence is to the effect that the grass plot casts the cellar way in shadow, and that the stairs cannot be seen. The plaintiff testified that she did not see them, and did not know of their existence; and she further testified that, while she was acquainted with the different ways the houses were built in that neighborhood, she had never seen the cellar way of a house constructed like this one.

The learned trial justice nonsuited this time because of the affirmative proof not only that the sign was no invitation to apply on the premises, but was a direct admonition to apply elsewhere. To this extent he was clearly correct. But the conclusion does not follow that "the plaintiff went upon the premises uninvited." The construction by the owner of the premises of the flagged pathway from the sidewalk to the basement gate, with a bell pull for communication with the inmates, is an implied invitation to use the same for all lawful and proper purposes of communication, in the absence of any evidence tending to restrict the use to the occupants of the building. A person ringing the doorbell of a house, not wantonly or in mischief, but in good faith, for civil inquiries, is neither a trespasser nor a mere licensee, but is in the position of one rightfully there, on the implied assurance of ordinary safety which is furnished by the presence and the purpose of the bell. To such a person the owner owes the duty, at least, of exercising that degree of care which will render

him reasonably safe, provided he exercise all reasonable care himself. The case is distinguishable from that of a technical trespasser, or one on the premises by license or mere sufferance, who enters at his own risk, using the premises as they are, and in favor of whom no duty of care or vigilance exists beyond abstention from affirmative negligence, and the avoidance of intrinsically dangerous springs, snares, etc. The plaintiff having seen on the sign, even as the result of her own indifference or inattention only, the fact that a flat in the house was to let, could still lawfully ring the doorbell to inquire about it, and, even had she noticed that applications were to be made elsewhere, she might nevertheless lawfully inquire of the janitor on the premises on which floor the flat was located, or any other pertinent matter, an answer to which might avoid all necessity of calling on the agents. Doorbells are occasionally rung for the mere purpose of inquiring the way or the residence of some one in the neighborhood, or in the business of vending wares. In all such cases the bell must be regarded, in the absence of limitation or warning, as at least an implied invitation. And if the place where the caller is impliedly invited to stand for the purpose of securing communication with the occupants of the house is dangerous, because of the absence of ordinary care, as, for instance, if the platform or stoop gave way because of long-existing neglect and decay, it cannot be said that the owner has not failed in the discharge of a lawful duty or obligation. The principle is equally applicable to the immediate propinquity of a dark cellar stairway, or may be so in the judgment of a jury. The language of Mr. Justice Bartlett in this case on the former appeal is still pertinent:

"The circumstances thus justifying the inference that there was an invitation to the plaintiff to enter for the purpose of inquiry, the question is presented whether the proximity of the cellar steps to the basement gate did not render it negligent on the part of the defendant to ask strangers to come there without in some manner warning them of the liability to which they were exposed of breaking their necks by taking a single step backward from the gate. * * * Even in the dark, one would hardly expect that a single step back from the place where she stood before a basement gate would precipitate her down a flight of stone steps into a cellar."

The authorities cited by the respondent are all distinguishable from this case. In Victory v. Baker, 67 N. Y. 366, the deceased was not in the factory on the invitation of the owner, either express or implied. Page 370:

"He was not there upon the business of the defendants, but upon the business of his employer. He entered by a way not intended to be used as an entrance to the factory, and, although the workmen and occasionally other persons used it, it was in disregard of the manifest intention of the defendants, as indicated by the fences and other arrangements of the property. It is not necessary to say that the deceased was a trespasser, but, at most, he was there by the sufferance of the defendants, and he took the risks attendant upon his being in the factory in the actual condition in which it was. A man may make an excavation on his own land, and leave it unguarded, without incurring any liability to persons passing over the land, with his license or permission, who may be injured by falling into it. Hounsell v. Smyth, 7 C. B. (N. S.) 729; Bolch v. Smith, 7 Hurl. & N. 736. If the owner places a spring gun on his premises, or does other like act imminently dangerous to human life, and designed to endanger it, he may be held responsible, even to a trespasser; but the facts in this case do not bring it within the principle upon which the liability in the case supposed rests. So, also, where one allows a dangerous

place in the nature of a trap to exist on his premises, he will be responsible for an injury caused thereby to persons who, by his invitation, express or implied, go thereon. The case of a customer who goes to trade at a store, or of a guest at an inn, are examples where the relation between the parties imposes a duty to make his premises reasonably safe for those who by his invitation enter them. Chapman v. Rothwell, 1 El., Bl. & El. 168; Indermaur v. Dames, L. R. 1 C. P. 274, L. R. 2 C. P. 311."

In Beck v. Carter, 68 N. Y. 283, the same distinction was observed, and the rule is stated in the headnote that:

"Where the owner of land, expressly or by implication, invites others to come upon his land, if he permits anything in the nature of a snare to exist thereon, which results in injury to one availing himself of the invitation, and who at the time is exercising ordinary care, such owner is answerable for the consequences. If, however, he gives but a bare permission to cross the premises, the licensee takes the risk of accidents in using the premises in the condition in which they are."

In McAlpin v. Powell, 70 N. Y. 126, a fire escape was used by the tenants as a balcony, and the landlord was held not liable for an accident resulting from its unsafe condition, because he gave neither license nor permission for such use, and there was no indication that it was designed to be so used.

In Larmore v. Iron Co., 101 N. Y. 391, 4 N. E. 752, the person injured was on the premises without invitation, and the case was distinguished in the headnote "from one where the person injured is an employé of the owner, or where the injury is caused by some dangerous thing placed by the owner upon the premises, without giving warning thereof, or where the owner, in the prosecution of his own purpose or business, invites another, either expressly or impliedly, to come upon his land, who is injured by unreasonable or concealed dangers, or where a licensee is injured by some affirmative negligence." The court said (page 395, 101 N. Y., and page 754, 4 N. E.):

"So, also, where the owner of land, in the prosecution of his own purposes or business, or of a purpose or business in which there is a common interest, invites another, either expressly or impliedly, to come upon his premises, he cannot, with impunity, expose him to unreasonable or concealed dangers, as, for example, from an open trap in a passageway. The duty in this case is founded upon the plainest principles of justice. Corby v. Hill, 4 C. B. (N. S.) 556; Smith v. Docks Co., L. R. 3 C. P. 326; Holmes v. Railway Co., L. R. 6 Exch. 123."

The distinction between a licensee and one on the premises by implied invitation is also recognized in Cusick v. Adams, 115 N. Y. 55, 21 N. E. 673, and Sterger v. Van Siclen, 132 N. Y. 499, 30 N. E. 987, 16 L. R. A. 640; while in Bond v. Smith, 113 N. Y. 378, 21 N. E. 128, the decision was based upon a failure to establish freedom from contributory negligence, and lack of proof that the area was a public nuisance, which the lower court had held it to be.

The case of Guichard v. New, 84 Hun, 54, 31 N. Y. Supp. 1080, is to some extent a direct authority in favor of the maintenance of this action. While the court in that case did not decide just what the injured boy's status was, the rule was laid down that the fact that a person who has sustained personal injuries while in a building belonging to another is technically a trespasser will not, as a matter of law, preclude a recovery of damages from the owner for the injuries he has sustained. In this case it is unnecessary to go so far. It is sufficient

to hold that where the owner of property has constructed a doorway and bell, apparently for general use, he owes to those who may call for any legitimate purpose the duty of exercising some care, to the end that it may be reasonably safe for them to stand there and ring; and that it is for a jury to determine whether the presence of an unguarded stairway so near that an instinctive motion or turn towards one in the house, who responds to the ringing, will precipitate the caller down the stairs, is consistent with the exercise of such care.

The judgment and order should be reversed.

Judgment and order reversed, and new trial granted; costs to abide the event. All concur, except SEWELL, J., taking no part.