RUTH W. WILKIE *vs.* RANDOLPH TRUST COMPANY
(and a companion case [1]).

Norfolk.   May 8, 1942. — June 1, 1944.

Present: FIELD, C.J., QUA, DOLAN, & RONAN, JJ.

*Negligence,* Invited person.

The facts, that one obtained the key to a vacant house from a real estate
agency with which it had been listed for sale, inspected the property
and returned the key to the agency; and that afterwards on the same
day, the agency then being closed and the key not available, he again
went to the property to inspect it and was injured there through a
defect in a porch railing, required a conclusion that at the time of his
injury he was not an invitee of the owner of the property.

Two ACTIONS OF TORT. Writs in the District Court of
East Norfolk dated May 18, 1940.

Upon removal to the Superior Court, the actions were
heard by an auditor whose findings were to be final, and
judgments for the defendant were ordered on his report by
*Hurley,* J.   The plaintiffs alleged exceptions.

*J. D. Goodman,* for the plaintiffs.

*E. J. Campbell,* (*E. Olsson* with him,) for the defendant.

RONAN, J.   The defendant listed for sale with a real
estate agency certain premises located in Braintree. There
was also a sign in one of the front windows which read
"For Sale.   Brooks, Real Estate, Randolph." Brooks was a
caretaker of the defendant's properties. The plaintiffs were
interested in purchasing a house in Braintree. They called
at the office of the real estate agency on a Sunday afternoon
in August, 1939, inquired concerning houses for sale in
Braintree, received the keys to several houses which were
for sale, including the key to the defendant's house, in-
spected these properties, and then returned the keys. There
was no evidence as to what took place or what was said
when the plaintiffs left the keys. The plaintiffs were con-

---

[1] The companion case is by Frederick E. Wilkie against the same defendant.

sidering the purchase of the defendant's premises, and with a relative whose advice they sought they again went to the agency at 6:30 P.M. to get the key but the office was closed. They again went to the property. They inspected the garage which was open but the house was locked. While the female plaintiff was standing against the railing of the back door platform, the railing gave way and she was injured. She sued for personal injury and her husband for consequential damages. The plaintiffs excepted to the ordering of judgments for the defendant upon the report of an auditor whose findings of fact were final.

In addition to the facts already recited, the auditor found that the invitation to the plaintiffs to visit and inspect the premises which was implied by the delivery of the key to them could not be extended to a second visit after the key had been returned and, without consultation with anyone representing the defendant, and ruled that the female plaintiff was not upon the premises at the time of the accident at the invitation of the defendant. He found for the defendant.

The report of the auditor is to be treated as a case stated and his conclusions which were reached entirely by way of inference from his subsidiary findings are reviewable by the trial court and by this court. *Keefe* v. *Johnson*, 304 Mass. 572. *Galante* v. *Brockton*, 305 Mass. 480. *Mahoney* v. *C & R Construction Co.* 311 Mass. 558. *Hanifin* v. *C & R Construction Co.* 313 Mass. 651.

The burden was upon the plaintiffs to prove that at the time of the accident the female plaintiff was lawfully upon the defendant's premises by virtue of either an express or an implied invitation of the real estate agency, which the auditor found was authorized to extend an invitation in behalf of the defendant. Doubtless, the plaintiffs while the key remained in their possession were invited to go upon the defendant's premises for the purpose of inspecting the house, and the defendant was under an obligation to exercise due care to maintain the premises in a reasonably safe condition for the use of those whom it induced to enter and inspect them with the view of becoming purchasers. *Marston* v.

*Reynolds,* 211 Mass. 590. *Sleeper* v. *Park,* 232 Mass. 292. *Serota* v. *Salmansohn,* 256 Mass. 224. *Lord* v. *Lowell Institution for Savings,* 304 Mass. 212. But an invitation has its limitations, and in order to entitle one to the protection of an invitation he must show that he was acting within the scope of the invitation when he was injured. *Holbrook* v. *Aldrich,* 168 Mass. 15. *Graham* v. *Pocasset Manuf. Co.* 220 Mass. 195. *Murphy* v. *Huntley,* 251 Mass. 555. *Davis* v. *Bean,* 298 Mass. 135. *Urban* v. *Central Massachusetts Electric Co.* 301 Mass. 519.

There is nothing to indicate that the real estate agency could not rightly understand that whatever interest the plaintiffs might have had in becoming purchasers had ceased when they returned the key. Returning the key without any evidence whatever tending to show that its return was not final and absolute warranted the inference drawn by the auditor and by us that the invitation had ended. The fact that the plaintiffs at the time they delivered the key might have been still interested in the property or afterwards entertained such an interest did not revive an invitation that had come to an end or authorize them again to visit the defendant's premises in the absence of any consent or authority from the defendant. The house, as the plaintiffs knew, was vacant and the doors were locked. The building was closed so far as the reception of prospective buyers was concerned. This condition of the property, even though it was on the market for sale, would not constitute an invitation to the general public, or even to those who might be desirous of becoming owners, to enter upon the premises for the purpose of inspecting them without any consent or any further action by the owner. The situation is entirely different from that of a storekeeper, the maintenance of whose shop creates a continuous invitation during the usual business hours to all members of the public who desire to trade with him. Here, the owner retained the right to select the persons who should go upon the land and examine the house. Even though the plaintiffs were still considering the purchase of the property when they made the second visit, they did not acquire the status of invitees in the absence of some conduct

upon the part of the defendant which induced them to make this visit. *Hector* v. *Boston Electric Light Co.* 174 Mass. 212, 215. They could not on their own account lawfully go upon the land of the defendant without its consent even though the purpose of their entrance might result in a benefit or advantage to the defendant. In a somewhat similar situation it was held that an employee of the lessor had no right to enter the demised premises which were in the exclusive possession of the lessee for the purpose of making repairs without the consent of the lessee. It was said that "A volunteer cannot impose liability upon another who is ignorant of his action even though it may be a benefit to such person." *Wurm* v. *Allen Cadillac Co.* 301 Mass. 413, 417.

The sign in the window did not bid the plaintiffs to enter but on the contrary directed them to apply to one Brooks who resided in another town and who in addition to the real estate agent who gave the plaintiffs the key had the property for sale. We think that upon the facts found by the auditor there was no error in ruling that the female plaintiff was not upon the defendant's property by virtue of any invitation at the time she was injured. The judge was right in ordering judgments for the defendant. *Cowen* v. *Kirby*, 180 Mass. 504, 507. *Barton* v. *Republican Co.* 277 Mass. 299, 302. *Herman* v. *Golden*, 298 Mass. 9, 12.

*Exceptions overruled.*