SINGLETON and another, Plaintiffs and Appellants, v. KUBIAK & SCHMITT, INC., Defendant and Respondent: BUCKMASTER, Interpleaded Defendant and Respondent.*

*February 2—March 8, 1960.*

* Motion for rehearing denied, with $25 costs, on May 3, 1960.

For the appellants there was a brief by *Bittner & Reynolds* of Green Bay, and oral argument by *Robert L. Bittner.*

For the respondent Kubiak & Schmitt, Inc., there was a brief by *Welsh, Trowbridge, Bills, Planert & Gould* of Green Bay, and oral argument by *Fred N. Trowbridge.*

For the respondent Neal Buckmaster there was a brief by *Cornelisen, Denissen, Farrell & Kranzush* of Green Bay, and oral argument by *Richard J. Farrell.*

MARTIN, C. J. Kubiak & Schmitt, Inc., is a Wisconsin corporation engaged in building and selling homes in Green Bay. Gerald Kubiak is president and general manager of the corporation. The defendant constructs and sells homes on either contract or speculation basis. In the latter case it purchases land and builds homes thereon according to its own plans and then offers them for sale. In February of 1956, the corporation had six such homes under construction, one of which was at 1517 Biemeret street, and it employed four men, including Gerald Kubiak, who worked in and about these homes. Gerald Kubiak acted as general contractor and was also in charge of the sale of such homes.

Neal Buckmaster was a carpenter-contractor who had worked exclusively for the corporation for two years prior to February 22, 1956. He supplied labor only, his materials being furnished by the corporation. In addition to Buckmaster, the corporation had plumbing, wiring, concrete, heating, excavation, masonry, brickwork, and plastering contractors in the construction of the houses.

On the evening of February 21, 1956, Gerald Kubiak visited the home of the plaintiffs, Mr. and Mrs. Singleton, and invited them to look at the house the corporation was building at 1517 Biemeret street. At about ten o'clock the next morning the plaintiffs went there for the purpose of inspection. The house in question was under construction to the extent that it was "roughed in." It had a basement; the outside walls and roof had been constructed, and the studdings and flooring were in place. The inside walls had not been lathed or plastered but the studdings, placed 14 inches apart, indicated the separation of the various rooms. Heat had been installed in the basement.

A stair well had been provided for a stairway from the first floor to the basement. It was located in the southerly part of the house between the kitchen and bathroom. The stair-well opening was seven feet long and 39 inches wide. No stairs had been installed, but the opening had been covered with a four-by-eight-foot, one-half-inch plywood sheet which had been nailed to the bottom of the first-floor joists from the bottom up. The covering was installed by Buckmaster for the purpose of containing the heat in the basement. The level of the plywood covering of the stair well was about $10\frac{1}{2}$ inches lower than that of the floor.

Plaintiffs entered the front door of the house which faced north. They walked into the living room, west through two bedrooms, south into a third bedroom in the southwest corner of the house and then east to the bathroom area. In doing so they moved through the studding. Plaintiffs were considering the possibility of enlarging the living area on the first floor and converting the second floor into a three-bedroom-and-bath area. From the bathroom, Mr. Singleton went up into the attic space and called to his wife to look at the roof pitch with respect to the rooms they wanted to locate upstairs. Mrs. Singleton testified that in order to observe the area they were talking about she stepped up

on a crosspiece of wood placed between the studs on the east wall of the bathroom about two feet above the floor level. When she was ready to get down from that position she looked down, then stepped down on the opposite side of the studding from which she had gotten up. When she stepped on the plywood covering of the stair well it gave way and she fell to the basement floor, sustaining the injuries from which this action arose.

The trial court held that the premises at 1517 Biemeret street were a place of employment within the meaning of sec. 101.01 (1), Stats., but that Kubiak & Schmitt was not an employer under the statute since it had relinquished control of the premises to Buckmaster and had no knowledge of the condition complained of.

We cannot agree with the trial court. Gerald Kubiak, as owner and general contractor, invited the Singletons to inspect the building with a view to purchasing the same. There is no question but that he had the authority to do so. The invitation carried the representation that the place was safe for their inspection. In Prosser, Law of Torts (2d ed.), p. 452, sec. 78, the author points to the rule that:

". . . as to those who enter premises upon business which concerns the occupier, and upon his invitation express or implied, the latter is under an affirmative duty to protect them, not only against dangers of which he knows, but also against those which with reasonable care he might discover."

This was a duty Kubiak & Schmitt could not delegate to Buckmaster. Prosser further states (p. 460):

"It is generally agreed that the obligation as to the condition of the premises is of such importance that it cannot be delegated, and that the occupier will be liable for the negligence of an independent contractor to whom he intrusts maintenance and repair."

Kubiak's authority to invite persons into the building for the purpose of inspection clearly implies that he had such control or dominion over the premises as would enable him to see to it that they were reasonably safe for that purpose.

In *Freimann v. Cumming* (1924), 185 Wis. 88, 91, 200 N. W. 662, this court said:

"Considering the language and general purpose of this statute, we now hold that in order to place such a liability as is here claimed against one as the *owner* of such premises there must exist in such person the right to present possession or present control or dominion thereover so that such person may lawfully exercise the rights necessary to permit him to properly enter upon the premises in order to perform such an ever-present duty as is fixed by this statute. A present right of possession is necessarily involved in the idea of a present duty to make repairs or changes."

Kubiak testified he had possession of the premises; that it was his job to inspect and check the houses as to the progress of the construction, and he had the right to tell the subcontractors what he wanted done. Taking the testimony as a whole we must conclude that Kubiak had retained such control of the premises as permitted him to discharge his duty under the statute with respect to prospective purchasers invited to inspect.

The degree of care required to make a place reasonably safe for workmen may be different from that with respect to lay persons. That would be a question for the jury. Buckmaster testified that the manner in which the stair well was covered was the customary trade practice, but the jury was not bound by this testimony. It had the right to take its own experience in considering the physical facts presented and determine whether the vicinity of the stair well had been made as safe as it reasonably could be under

all the circumstances. The usual and customary way of covering a stair well at that stage of the construction might be reasonably safe for employees but not for persons having no knowledge of building customs. The jury was warranted in finding as it did and the verdict must be reinstated.

Plaintiffs argue that there is no evidence to support the finding that Mrs. Singleton failed to exercise ordinary care for her own safety. She testified that her husband had warned her to be careful when they entered the house because it was under construction. She had seen the plans of the house. The level of the stair-well area, approximately seven by three feet, was recessed 10½ inches below the level of the floor, and the door openings at either end had been barricaded by two by fours nailed across the studding. All this she should have noticed in the exercise of ordinary care, but she testified she did not and was not concerned with the stair well because she was concerned only with the changes she and her husband were discussing. She stepped up on a crosspiece between the studdings of the wall between the bathroom and stair well, raising herself to look into the attic area. Although she looked down before she stepped down, she testified she was not aware of the fact that she had turned around and was stepping down into the stair-well area rather than on the bathroom floor from which she had stepped up. She was not aware of the lower level she was stepping on but only that it appeared to be of the same material as the floors. In the exercise of ordinary care she would have been aware of these conditions.

*By the Court.*—Judgment reversed, and cause remanded with directions to reinstate the jury verdict and enter judgment thereon.