## STOTTLEMYER ET AL. *v.* GROH

[No. 69, October Term, 1952.]

*Decided February 5, 1953.*

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Francis H. Urner* and *W. Warren Stultz,* with whom was *William A. Gunter* on the brief, for the appellants.

*Leo H. Miller,* with whom were *Edwin H. Miller* and *W. Earle Cobey* on the brief, for the appellee.

SOBELOFF, C. J., delivered the opinion of the Court.

This appeal brings up for review an order for judgment *n.o.v.* which set aside verdicts of the jury in favor of the appellants, Mr. and Mrs. Stottlemyer, for personal injuries sustained by Mrs. Stottlemyer. The sole question before us is whether there was sufficient evidence to justify submission to the jury of the question of the appellee's negligence.

Having purchased a lot located at the northwest corner of Mulberry and Baltimore Streets in Hagerstown improved by five three-story brick dwellings facing Mulberry Street, the appellee proceeded to remodel the buildings. One of the changes which he effected was the installation of an oil tank in the yard in the rear of the properties. This necessitated an excavation of approximately 10 feet by 12 feet and the removal of the bricks with which that much of the yard surface had been paved.

The tank installation was to the rear of the buildings, and just north of the Baltimore Street property line. The bricks thus removed were piled on the appellee's premises about 1½ feet to 2 feet from the sidewalk which paralleled that property line. The appellee's testimony was that all the bricks removed from the yard for the installation of the tank were placed in an "L" shaped areaway between the first and second houses. This would locate the bricks approximately 20 feet from the property line which coincides with the edge of the street pavement; but in our consideration of the case we are obliged, as was the trial court on the motion *n.o.v.*, to accept as fact the testimony of the appellants' witnesses that the bricks were at the place designated by them within not more than 2 feet from the sidewalk. The fence along the north edge of the concrete sidewalk of East Baltimore Street, (the property line,) had been removed to facilitate remodeling operations and the pile of bricks was not closed off from the highway. The number of bricks thus piled on the appellee's property was estimated to be between fifty and two hundred and it has been not unreasonably suggested by the appellants that, considering the size of the area excavated for the tank and from which the bricks were removed, there could have been as many as several hundred bricks in the pile. The bricks were not arranged in regular order but were heaped roughly, and the heap was estimated by all the witnesses to be not over 2 feet high.

A trench had been cut across the sidewalk for a sewer line some weeks before the accident. It was 18 inches in width and was located, according to the diagram furnished this court jointly by counsel for appellants and appellee, about 6 feet east of the brick pile. The trench had since been refilled, and each day before leaving the job the appellee's workmen would add earth to the trench to compensate for the settling and to make it level with the rest of the sidewalk.

On the evening of February 8, 1951, Mrs. Stottlemyer was injured when she fell and struck her elbow against

the cement edge of the trench. The cause of her fall, according to her testimony, was a brick frozen to the sidewalk about 2 feet west of the trench and hence about 4 feet east of the pile of bricks and about 2 feet south of the building line. There was some testimony by a witness for the appellants, as well as one for the appellee, that Mrs. Stottlemyer was running at the time of her fall; but she and her husband testified that she was walking, and for our purposes it is assumed that she was walking. As the accident happened on a dark, cloudy night no question has been raised or argued of any contributory negligence on her part. Also we shall assume (though this is not free from doubt) that the evidence was sufficient for a finding that the brick, described as old and of the same color as the piled bricks, was in fact the appellee's and came from the above described pile.

One of the witnesses testified that after the accident he kicked the (frozen) brick but it adhered so firmly to the sidewalk that he could not budge it. It, in fact, remained in position until sometime in the afternoon of the following day.

Two theories are advanced by the appellants upon which they assert the jury might properly have found the appellee negligent.

1. The first theory is based on the contention that the brick which caused the injury could not have been frozen as firmly as it was to the sidewalk except after the lapse of a considerable period of time, so long in fact as to charge the appellee with constructive notice of its presence. The appellants accordingly point out that the sidewalk was cleared of the snow which had fallen two days before the accident; and they suggest that a brick placed on a clean concrete sidewalk, even on an extremely cold night, would not adhere at all, and that even if it were placed on a snow-covered surface any possible adhesion would be slight. They infer, therefore, from the tight adherence of the brick, that it fell or was dropped on a snow-covered surface while

thawing was occurring. "This being true", their argument continues, "the brick must have been on the sidewalk since the last warm spell which, at the latest, had to have been around noon of the day of the accident or it must have been there since the 6th or 7th of February" (one or two days before the accident), since it was testified that it had snowed on one of those dates. Upon this series of assumptions and inferences the appellants predicate a conclusion that the appellee or his workmen had sufficient time to detect and remove the brick before the accident. This argument is ingenious but not convincing for it is too speculative. There was no evidence in the Record as to how long it would take a brick to freeze to the sidewalk, and we cannot say that a jury relying on its own knowledge and experience could without sheer speculation form a judgment as to the essential element, namely, the length of time the brick must necessarily have remained in position before the accident.

It is further reasoned by the appellants that as the location was much travelled by workmen of the appellee engaged in the remodeling operation in going to and from the trench to inspect and refill it, there was opportunity to correct the dangerous condition by removing the brick. This assumes that a brick was there for the workmen to see and remove, yet that is the very point which is essential to be established but is not supported by adequate testimony.

One of appellees' witnesses testified that on the afternoon of the day of the accident he visited the site and no brick was there.

It is indisputable and elementary that the trial court should not withdraw from the consideration of the jury a contested question of fact if there is any evidence legally sufficient to support a finding of that fact. Repeatedly this court has declared that in the consideration of a demurrer prayer or a motion for a judgment *n.o.v.* the plaintiff is entitled to an assumption of the truth of all evidence favorable to him and to all such inferences

as may naturally and legitimately be deduced therefrom, but this is not to say that a plaintiff is entitled, in the absence of testimony and upon a mere suggestion of possibilities to have a jury speculate in his favor. *Perdue v. Brittingham*, 186 Md. 393, 47 A. 2d 491. The most that one can say in this case is that there is a bare possibility that the brick was there as long as the appellants claim, that is, long enough to charge the appellee with constructive notice. The mere possibility is not sufficient; a jury may not be permitted to indulge in speculation in the absence of evidence. *Butler v. Reed-Avery Co.*, 186 Md. 686, 48 A. 2d 436.

The appellants urge upon us yet another inference which they claim the jury could legitimately have made in their favor and against the appellee. A witness testified that the brick was still in the same position the next day at three o'clock in the afternoon. The appellants suggest a parallel between this case and that of *Frenkil v. Johnson*, 175 Md. 592, 3 A. 2d 479. There the driver of an automobile sued for injuries caused by his being struck with debris thrown from a building in the course of demolition as a result of an explosion of illuminating gas which had escaped into the building. There was testimony that after the explosion the source of the flow of gas into the building was ascertained within a few hours and the escape of the gas was immediately and completely stopped. This court agreed that this fact was entitled to be considered by the jury in determining whether the defendant had adequate time in which to act *before* the explosion to make the premises reasonably safe. We think the two cases are entirely different. That the flow of gas could be and was stopped within a few hours after an explosion might reasonably be considered an indication that the defendant had ample opportunity to abate the dangerous condition in the much longer period preceding the accident, after he had actual or constructive notice of the escape of gas. In the present case, however, a showing that the appellee may have delayed unduly after the accident in removing the

offending brick can hardly be taken as evidence to justify a finding of undue delay before the accident in eliminating a hazard of which he had actual or constructive knowledge.

2. The second theory of the appellants is that apart from actual or constructive notice of the brick's presence on the sidewalk, negligence may be inferred from the fact that the appellee maintained a pile of bricks on his premises, adjacent to the pavement, in such condition that one of them escaped and became frozen to the pavement and thereby caused appellant's injuries.

It is unquestionably the law that an owner of property abutting on a highway is under an obligation to use reasonable care not to endanger travellers on the highway by objects so located on his premises that they are likely to cause injury. *Ruocco v. United Advertising Corp.*, 98 Conn. 241, 119 A. 48, 30 A. L. R. 1237, cited by appellants. Maryland cases declare the same rule. *Ver-Vac Bottling Co. v. Hinson*, 147 Md. 267, 128 A. 48; *Frenkil v. Johnson, supra*.

The precise question before us is whether the presence on the appellee's premises of not more than several hundred bricks in a pile not over 2 feet high and at least 1½ feet or 2 feet behind the building line presents such a danger to the public as to constitute evidence of negligence. In support of an affirmative answer to this question, the appellants cite a number of cases. An examination of these delineates the distinction between cases where evidence was held sufficient for a finding of negligence and the case before us. Of course, where it was shown that the owner of a junk yard placed tangled bunches of wire so that they would overhang the sidewalk and unloading teamsters departed at the end of the day leaving some of this material to trap a passerby, such conduct could be found to be negligent. Such was the holding in *Agnew v. Franks*, 255 Mass. 539, 152 N. E. 346, cited by the appellants. A jury could reasonably find this to be negligence because a reasonable man should foresee that that which happened was quite likely to hap-

pen. Likewise, it was held in *Ruocco v. United Advertising Corp., supra,* relied on by the appellants, that where one maintained a garage with an open door adjacent to the sidewalk, and inside the door there was an unprotected electrically charged chain with which passersby could come into contact without leaving the sidewalk, actionable negligence was found. And where one erected an advertising sign to overhang the sidewalk and it fell upon a passerby, he may he held liable. *Zolezzi v. MacCanlis et al.,* 210 App. Div. 368, 206 N. Y. S. 330. Or where a large wooden gate attached to a fence falls upon a passerby lawfully using the public way, the property owner may be held negligent. *Pindell v. Rubenstein,* 139 Md. 567, 115 A. 859.

It requires no sublety, however, to perceive the distinction between an electrically charged chain, or an overhanging billboard secured by corroded and rotten galvinized wire, or a defective door in a fence at the sidewalk, all of which involve substantial dangers, and a small pile of bricks situated 1½ feet or 2 feet inside the property line and not over 2 feet high. For in the latter instance it cannot reasonably be said that there was in the existence and location of these bricks a likelihood of injury to a member of the public.

Nor is the case before us analogous to that of *Gaul v. General Utilities Corp.,* 133 Pa. Sup. 282, 2 A. 2d 533, heavily relied on by appellants. There, in making a delivery of fuel oil to the premises a quantity of oil was spilled on the sidewalk and permitted to remain there. The dangerous material was actually placed on the sidewalk by the defendant, and as it was not unreasonable to anticipate the consequences of his failure to abate the condition which he caused, the defendant was held negligent..

In this state, where a pile of beer kegs was stacked to a height of about 8 feet on or near the sidewalk "in such a manner as to be dangerous to passersby", it was held that the averment of negligence was good on demurrer. There the fact situation was obviously dis-

simmilar to ours. *Havre de Grace v. Fletcher,* 112 Md. 562, 77 A. 114.

In a Missouri case a pedestrian was injured by a brick that had come from an adjacent property, but the record showed, first, that bricks had been piled not on the lot itself but in the parking area between the curbing and the sidewalk; and, second, that from time to time over a period of weeks children had been taking bricks from the pile and scattering them on the sidewalk. The de fendant had tolerated this practice and done nothing to prevent a continuation of the nuisance. Even in that case, a new trial was granted because the court had instructed the jury that if the brick causing the injur was so placed as to be "liable to fall upon, or be thrown down upon" the sidewalk, and trip and injure a pedestrian, etc., the verdict should be for the plaintiff. The court said that the language "liable to fall upon, or be thrown down upon" was misleading, for it might "make that which was possible negligence". (That is to say, the appellate court criticised the charge on the ground that it treated as negligence a failure to act against the mere possibility of injury). *Sutter v. Kansas City,* 138 Mo. App. 105, 119 S. W. 1084. The distinction is important here. The fact that there *can* be a concurrence of events which may cause injury is not enough for a finding of negligence. More than mere possibility— reasonable likelihood, at least—is required.

The likelihood of a brick becoming dislodged and causing injury to one using the sidewalk is no greater than the likelihood of any piece of material or equipment in a building operation finding its way from the scene of construction to the adjacent sidewalk. The only effective measure to prevent an accident would be either to fence in these materials or to station a watchman to maintain a constant guard. Such requirements are not to be found in any building regulations in the City of Hagerstown that our search has been able to yield. Nor have such precautions been considered reasonably necessary even in Baltimore City where a minutely de-

tailed building code has been ordained. *Baltimore City Building Code.* (1950)

It is not negligence *per se* for a property owner who is altering a building to permit a pile of bricks variously estimated to contain fifty to several hundred, and only 2 feet in height, to be placed 2 feet from the adjacent sidewalk. This is such ordinary and moderate conduct in the circumstances that it would be unreasonable for the court to insist upon precautions which, so far as we have been made aware, have not been thought necessary as a practical matter by those engaged in building or remodeling or by the public authorities who supervise their activities. It is not negligence to observe a standard of conduct which is not shown to be unusual and which i˙˙ generally not thought to call for special measures to avoid injury. Each case must be ruled by its own facts. Conceivably a case might arise where bricks or other materials might be placed near a sidewalk in a heap so high and so unstable as to require special care to avoid harm to pedestrians. The matter would have to be dealt with according to its own conditions. We hold this is not such a case.

For these reasons we conclude that the judgment *n.o.v.* should be affirmed.

*Judgment affirmed, with costs.*