540 A.2d 499

**William E. DOEHRING, Personal Representative of the Estate of William E. Doehring, Jr., et al.**

**v.**

**George O'Neill WAGNER, et al.**

**No. 395, Sept. Term, 1987.**

Court of Special Appeals of Maryland.

May 4, 1988.

Certiorari Granted Sept. 2, 1988.

**68**

Michael T. Ward (Peter G. Angelos, on the brief), Baltimore, for appellants.

Charles N. Ketterman (Susan A. Polis and Donahue, Ehrmantraut & Montedonico, Chartered, on the brief), Baltimore, for appellees.

Argued before BISHOP, ALPERT and ROSALYN B. BELL, JJ.

BISHOP, Judge.

William E. Doehring, Jr. was killed when the motorcycle he was operating struck a chain which had been placed across a right-of-way by the holders of the right-of-way. We address the issue of what duty of care is owed by the holder of an easement to a person who enters upon the easement, without authority, and who is a trespasser as to the grantors of the easement.[1]

---

1. Appellants raise the following issues:

    I. The trial court erred in finding as a matter of law that the appellees' duty was merely to refrain from willfully and wantonly injuring the decedent:

William E. Doehring, Personal Representative of the Estate of William E. Doehring, Jr., deceased, and William E. Doehring, Elizabeth M. Doehring, Surviving Father and Mother of William E. Doehring, Jr., deceased, appeal from an Order of the Circuit Court for Harford County which granted the Motion for Summary Judgment [2] filed by appellees, George O'Neill Wagner and Beverly L. Wagner t/a Bowag Kennels.

## FACTS

Appellees are the owners of a 1.6 acre parcel of land (dominant estate) wholly surrounded by land owned by Reuben Shiling and W. Dale Hess (servient estate). Shiling and Hess granted to the prior owners of the dominant estate a 50 foot wide right-of-way running approximately 722.93 feet over the servient estate to connect appellees' 1.6 acre plot to Singer Road. The right-of-way provided ingress and egress for appellees, the owners of the dominant estate. Shiling and Hess reserved the right to use the right-of-way, but have not in fact used it or granted anyone else permission to use it.

The base of the right-of-way by Singer Road is forked, with a triangular patch of roadway between the two prongs. On this patch there is a sign which reads "Bowag Kennels Boarding and Grooming", a residential mailbox and a box for home newspaper delivery. Appellees operate a

---

    A. The decedent was not a trespasser as to the appellees since they were not possessors of the land.

    B. There are genuine disputes of material fact relating to the decedent's status due to the appearance of the right-of-way.

  II. The trial court erred in finding as a matter of law that the appellees did not willfully or wantonly injure the decedent.

We will address only the issue which we have framed above.

**2.** Appellants' initial Order of Appeal was filed on March 5, 1987. We dismissed the appeal on June 1, 1987 on the ground that no entry of final judgment had been made from which an appeal would lie. Appellants filed a petition for writ of certiorari in the Court of Appeals. After granting the petition, the Court vacated the dismissal order and remanded the case for a determination on the merits. 311 Md. 272, 533 A.2d 1300.

kennel on their property at which show dogs are boarded. Appellees were aware that unauthorized persons on motorcycles drove up and down the right-of-way at high rates of speed scaring their grandchildren and dogs. They were also aware that cyclists drove up the right-of-way and cut off onto a dirt pathway on the servient estate of Shiling and Hess, and sometimes partied alongside the road. In September of 1982, appellees stretched a chain across the right-of-way at the top of the fork near Singer Road to impede entry onto the right-of-way. The chain was hung from two poles, one on each side of the entrance to the right-of-way. There is conflicting evidence as to whether the chain was marked with either a sign or reflectors.

Just prior to midnight on October 2, 1982, William Doehring, Jr., and his friend, Kelvin Henderson, were riding on William's motorcycle. The motorcycle was not equipped with a headlight, and the riders were not wearing helmets. When they turned off of Singer Road and onto the right of way, the motorcycle struck the chain, causing the riders to be thrown off. William Doehring, Jr. was transported to Johns Hopkins Hospital and was pronounced dead at 4:18 a.m. on October 3, 1982.

Decedent's father, as personal representative of the estate, along with his mother as surviving parents, filed wrongful death and survival actions against appellees. Appellees answered the complaint and filed a Motion for Summary Judgment which was granted on the grounds that the decedent was a trespasser as to appellees and thus they owed him no duty of care except to refrain from willfully or wantonly injuring or entrapping him. This appeal followed.

## STANDARD OF REVIEW

Md. Rule 2–501 governs motions for summary judgment, subsection (e) provides in part:

(e) **Entry of Judgment.**—The court shall enter judgment in favor of or against the moving party if the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine dis-

pute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law.

"The function of a summary judgment proceeding is not to try the case or attempt to resolve factual issues, but to determine whether there is a dispute as to a material fact sufficient to provide an issue to be tried". *Berkley v. Delia*, 287 Md. 302, 304, 413 A.2d 170 (1980). In determining whether a factual dispute exists all inferences must be resolved in favor of the party opposing the motion. *Id.* at 304–05, 413 A.2d 170.

The party opposing the motion is required to produce facts under oath, based upon personal knowledge of the affiant, in order to defeat the motion. Bald, unsupported statements or conclusions of law are insufficient. *Hoffman Chevrolet, Inc. v. Wash. Co. Nat. Sav. Bank*, 297 Md. 691, 712, 467 A.2d 758 (1983).

## I.

Appellants argue that summary judgment was inappropriate because there was a genuine dispute as to the status of the decedent. They argue that even if the decedent was a trespasser as to Shiling and Hess, who owned the land on which appellees maintained their right-of-way, it does not necessarily follow that the decedent was a trespasser as to appellees who were mere holders of an easement.

### Duty of Easement Holder

Under Maryland law, the standard of care required by owners of real or personal property to individuals on their property is governed by "the individual's status while on the property, *i.e.*, whether he is an invitee, licensee or trespasser." *Bramble v. Thompson*, 264 Md. 518, 521, 287 A.2d 265 (1972).

Where the person is a "bare licensee"—one who enters the property for his own purpose or convenience and with the landowner's consent but not as a social guest—the law imposes only a minimal obligation on the landowner:

to refrain from willfully or wantonly injuring or entrapping the person "once his presence is known." The same standard applies to trespassers, defined as those who enter without privilege or consent of the landowner. *Mech. v. Hearst Corp.*, 64 Md.App. 422, 426, 496 A.2d 1099 (1985), *cert. denied*, 305 Md. 175, 501 A.2d 1323 (1986) (citations omitted).

In the case *sub judice*, it is not contended that the decedent had any express invitation to use the right-of-way. There is no basis for any claim of implied invitation since all that can be gleaned from the record, when taken in the light most favorable to the appellants, the non-moving parties, is that appellees acquiesced in the use of their property since they knew that motorcyclists were using the right-of-way. Nonetheless, "[a]cquiescence is not invitation, and at most, changes the status of the trespasser to that of bare licensee, to whom the owner owes no greater duty than to a trespasser." *Crown Cork and Seal Co. v. Kane*, 213 Md. 152, 157, 131 A.2d 470 (1957) (quoting *Carroll v. Spencer*, 204 Md. 387, 393, 104 A.2d 628 (1954)). Accordingly, the duty owed by a landowner to the decedent was merely to refrain from willful or wanton misconduct or entrapment. The novel question presented by these facts, however, is whether appellees, as holders of an easement, owed a different duty to the decedent than Shiling and Hess as landowners did?

An easement is "broadly defined as a nonpossessory interest in the real property of another and arises through express grant or implication." *Boucher v. Boyer*, 301 Md. 679, 688, 484 A.2d 630 (1984) (citations omitted). Easement holders have the right to "prepare, maintain, improve, or repair the way in a manner and to an extent reasonably calculated to promote the purposes for which it was created." *Fedder v. Component Structures Corp.*, 23 Md. App. 375, 381, 329 A.2d 56 (1974). The purpose of the easement in the case *sub judice* was to provide ingress and egress to appellees' property. There is no language in either the contract of sale or the deed that indicates that

appellees' right-of-way was intended to be exclusive. "[A] general or unrestricted grant of a right-of-way is not ordinarily exclusive, and thus the dominant owner normally has no right to exclude the grantor or others from the use of the way" 25 Am.Jur.2d *Easements and Licenses* § 77 (1966).

Accordingly, we must determine what obligation appellees, as holders of a non-exclusive, non-possessory interest in land, owed to the decedent. Section 386 of the Restatement (Second) of Torts provides:

> Persons Other Than Possessor, Members of His Household, and Those Acting on His Behalf Who Create Dangerous Condition:
>
> *Any person,* except the possessor of land or a member of his household or one acting on his behalf, *who creates or maintains upon the land a structure or other artificial condition which he should recognize as involving an unreasonable risk of physical harm to others upon or outside of the land, is subject to liability for physical harm thereby* caused to them, *irrespective of whether they are* lawfully upon the land, by consent of the possessor or otherwise, or are *trespassers as between themselves and the possessor.* (Emphasis added.)

Because appellees are neither possessors (owners) of the land nor members of the owners' household, we must only determine whether they were acting on behalf of the owners. The answer to this question is provided by Comment a to Section 383 which states in part:

> The words "acting on behalf of the possessor" are used to indicate that the person in question is acting not only for the purposes of the possessor but also by his direction or consent and therefore by his authority. One acting on behalf of the possessor may do so as a servant or as an independent contractor.

Comment b to Section 386 elaborates on the rationale for extending the limited liability of the possessor to those acting on his behalf:

Such persons are using the land in a manner and for purposes essential to the possessor's enjoyment thereof. Where, however, a possessor permits or invites others to come upon his land to use it for their own purposes, there is no longer any such reason for permitting them to share in those privileges of the possessor which permit him to ignore the actual probability of the intrusion of trespasser, and which relieve him from liability for his failure to exercise reasonable care to make the land safe for the reception of licensees. *This is particularly true where the licensee acting for his own benefit is dealing with the land in a way which, unless reasonable care is exercised, involves the probability of creating a condition upon the land which is likely to cause serious physical harm or death to licensees or actually expectable trespassers.* (Emphasis added.)

The illustration to the section bears this premise out:

1. The A Electric Power Company strings its heavily charged high tension wires across the land of B. Owing to the failure of the A Company to make a timely inspection, the fact that one of these wires has been damaged by a storm and is likely to fall at any moment is not discovered. The wire does fall and, in falling, strikes C, inflicting serious burns upon him. The A Company is subject to liability to C irrespective of whether C is on B's land with B's consent or as a trespasser, and irrespective of whether B has consented to the stringing of the wires across his land, unless the maintenance of the wires on B's land is not only with B's permission but also for the purpose of supplying B with electrical service.

In the case *sub judice,* appellees were granted a non-exclusive right-of-way. It is obvious that their use of the land for ingress and egress could not be categorized as "essential to the possessor's [grantor's] enjoyment" of the land. The appellees, as the holders of the easement, were acting for their own benefit and therefore they do not enjoy the limited liability afforded a landowner. Instead of measuring their conduct by the willful and wanton standard appli-

cable to a trespasser/possessor relationship, the trial court must examine whether they used reasonable care when dealing with the land.

It comes as no surprise that the illustration to Section 386 deals in terms of utility companies, since there are a number of cases involving power line easements granted to them. In a majority of cases decided outside our jurisdiction, the courts have held that plaintiffs, who were injured while trespassing on land owned by third persons, were not trespassers as to the easement holders (the utility companies) because there was no interference with the holder's interest. *See,* Annot., 30 A.L.R.3d 777 (1970). For example, in *Earl W. Baker Utilities Co. v. Haney,* 203 Okl. 91, 218 P.2d 621, 624 (1950), the Supreme Court of Oklahoma stated:

> [The utility company] was not entitled to the exclusive possession of the land by virtue of its right-of-way easement, nor was plaintiff, who attempted to pass under its wires, a trespasser to whom it owed no legal duty except on discovery of his presence not to wantonly or willfully injure him. Such defense was not available to defendant in the absence of proof showing that its use and occupancy of the land or its wires and poles were in some manner interfered with by the trespass of plaintiff.

Similarly, in *Langazo v. San Joaquin Light and Power Corp.,* 32 Cal.App.2d 678, 90 P.2d 825, 830 (1939), it was said:

> [C]onceding that plaintiff was a trespasser as to the owner, he was not a trespasser as to defendant, and defendant may be held liable for negligence in failing to exercise proper care and precaution to prevent injury, not only to persons who had a right to be at the place where the injury occurred, as to whom liability for negligence is unquestioned, but also to persons whom defendant should reasonably have anticipated might be present and exposed to danger at that place, as in the case of places to which children or other persons are accustomed to resort, although without technical right to be at such places.

We hold that the court erred, as a matter of law, in granting summary judgment based upon its holding that the decedent was a trespasser as to appellees. The decedent may have been a trespasser as to the landowners (Shiling and Hess), but he was not a trespasser as to appellees, since the easement only provided them with a right of ingress and egress and conferred neither a possessory right nor a right to exclude others. Thus, the evidence presented should not have been judged by the willful or wanton standard seemingly applied by the trial court[3] but, rather, the court should have determined whether appellees "create[d] or maintain[ed] upon the land a structure or other artificial condition which he should recognize as involving an unreasonable risk of physical harm to others upon or outside of the land. . . ." § 386 Restatement (Second) of Torts.[4]

JUDGMENT REVERSED; CASE REMANDED TO CIRCUIT COURT.

COSTS TO BE PAID BY APPELLEES.

---

**3.** The trial court stated in its opinion that it concurred with the defendants' (appellees) argument that the decedent was a trespasser and thus was owed no duty of care except to refrain from willfully or wantonly injuring or entrapping him. We note, however, that the court never made an *explicit* finding under that standard. Nonetheless, since the court granted the summary judgment motion, we assume that it implicitly decided that appellees' actions were not taken with a willful or wanton intent to injure.

**4.** Neither the trial court nor this Court addressed the issue of contributory negligence which certainly may be a factor in the ultimate disposition of this case.