562 A.2d 762

**William E. DOEHRING, Personal Representative of the Estate of William E. Doehring, Jr., et al.**

v.

**George O'Neill WAGNER, et al.**

No. 395, Sept. Term, 1987.

Court of Special Appeals of Maryland.

Aug. 30, 1989.

Michael T. Ward (Peter G. Angelos, on the brief), Baltimore, for appellants.

Charles N. Ketterman (Susan A. Polis and Donahue, Ehrmantraut & Montedonico, Chartered, on the brief), Baltimore, for appellees.

Argued before BISHOP, ALPERT, and ROSALYN B. BELL, JJ.

## ON REMAND

BISHOP, Judge.

This case is before us on remand as a result of *Wagner v. Doehring*, 315 Md. 97, 553 A.2d 684 (1989), which reversed our judgment in *Doehring v. Wagner*, 75 Md.App. 67, 540 A.2d 499 (1988).

Appellants are William E. Doehring, father and personal representative of the estate of decedent, William E. Doehring, Jr., and Elizabeth M. Doehring, the decedent's mother (the Doehrings). Appellants filed an action in the Circuit Court for Harford County against appellees, George O'Neill and Beverly L. Wagner (the Wagners) for the wrongful death of the decedent, who died as the result of a motorcycle accident on the Wagners' property. The circuit court granted the Wagners' motion for summary judgment, after finding that the decedent was a trespasser upon the Wagners' right-of-way at the time of his death, and that the Wagners owed him only a duty to refrain from willful and wanton conduct. We reversed on the ground that the Wagners' interest in the right-of-way was nonpossessory,

and consequently they owed the decedent the duty of exercising reasonable care in maintaining the property.

The Court of Appeals upheld the circuit court's finding that, as a matter of law, the Wagners owed a general duty to trespassers only to refrain from willful and wanton conduct and directed that, on remand, we determine whether, as a matter of law, the Wagners' conduct was wanton or willful and any other issues properly before this Court.

## ISSUES

Based on the mandate of the Court of Appeals, we address the following issues:

I. Whether the trial court erred in granting appellees' motion for summary judgment to the extent that there was a genuine dispute of material fact concerning decedent's status with respect to appellees' right-of-way.[1]

II. Whether the appellees' conduct with respect to the decedent was willful and wanton.

## FACTS

For purposes of this opinion, the important facts are the following. The Wagners own residential property, as well as a kennel business, both of which are located off Singer Road in Harford County. They also possess a right-of-way over a driveway next to their property that is owned by their neighbors, Reuben Shiling and W. Dale Hess. Although they had not given anyone permission to traverse the driveway, the Wagners were aware that motorcyclists

---

1. At 315 Md. at 103, fn. 4, 553 A.2d 684, the Court of Appeals stated:
   Doehring argues that his status is that of a bare licensee because the Wagners purportedly acquiesced in the use of the right-of-way by the motorcyclists. Only the duty owed a trespasser, under the circumstances of this case, was raised as the issue presented in the petition for writ of certiorari; thus, we do not address the duty owed a bare licensee, or whether the motorcyclists occupied that status. *See* Md. Rule 8–131(b)(1).
   For purposes of this opinion, we will follow the lead of the Court of Appeals and will not discuss whether the decedent occupied the status of a bare licensee.

frequently did so at all hours of the day and night, in order to gain access to a dirt path on the Shiling and Hess property. The driveway was paved with a macadam surface.

Sometime before the accident which is the basis of this action, the Wagners hung a chain between two posts which they erected on each side of the driveway.[2] The purpose of the chain was to impede the use of the driveway by motorcyclists, who had in the past frightened the Wagners' grandchildren and their show dogs.

Just before midnight on the night of the tragic accident, Doehring was driving his motorcycle along Singer Road. A passenger was riding with him. Doehring was not wearing a helmet and his motorcycle had no headlights. Traveling at a fast speed, Doehring drove his motorcycle onto the driveway next to the Wagners' property, and hit the chain. He was thrown from the motorcycle by the impact, and sustained fatal injuries.

Upon a triangular patch of land to the side of the driveway was a tree on which the Wagners had posted signs saying "Bowag Kennels" and "No trespassing between 7 p.m. and 9 a.m." Mr. Wagner stated in a deposition that the no trespassing signs had been posted there for years before the accident, but that strangers intermittently stole them or tore them down. He did not know whether the signs were up on the night in question. A private detective who investigated the accident scene a month after the accident, stated in an affidavit that no "No Trespassing" signs were posted anywhere near the chain. Another affiant, and neighbor of the Wagners, swore that on the night of the accident there were no such signs either on or near the chain, and no other warning signs or indicia that the driveway was private.

---

**2.** There was conflicting testimony regarding when the chain was installed; the Wagners testified that it was months before the accident. Another witness stated in an affidavit that it was only two weeks before the accident.

## I.

### *The Trespasser Issue*

"A grant of summary judgment is appropriate only where a two-fold test is met. The movant must clearly demonstrate the absence of any genuine issue of material fact and must also demonstrate that he is entitled to judgment as a matter of law. Md. Rule 2–501(a) (1989 Repl.Vol.)"; *DeGroft v. Lancaster Silo Company*, 72 Md.App. 154, 159, 527 A.2d 1316 (1987). Even where one shows a material dispute as to a fact, however, "when the resolution of that factual dispute is not material to the controversy, such dispute does not prevent the entry of summary judgment. Such a material fact must be one, the resolution of which will somehow affect the outcome of the case." *Lynx v. Ordnance Products*, 273 Md. 1, 8, 327 A.2d 502 (1974); *King v. Bankerd*, 303 Md. 98, 111, 492 A.2d 608 (1985). "In ruling on a motion for summary judgment, all disputed facts and inferences therefrom should be viewed in the light most favorable to the party against whom the motion is made." *Berkey v. Delia*, 287 Md. 302, 306, 413 A.2d 170 (1980); *DeGroft*, 72 Md.App. at 160, 527 A.2d 1316.

The Doehrings argue that a material dispute exists concerning the status of the decedent at the time of his death with respect to the driveway given that, according to them, the road was held out as a public road. If in accordance with *Berkey* and *DeGroft* we resolve all inferences in the Doehrings' favor, we still must find that the resolution of this dispute will affect the outcome of the case.

The Doehrings bolster their argument with Restatement (Second) of Torts § 367 (1965) which provides:

Dangerous Conditions of Land Appearing to *be a Highway*

A possessor of land who so maintains a part thereof that he knows or should know that others will reasonably believe it to be a public highway is subject to liability for physical harm caused to them, while using such part as a

highway, by his failure to exercise reasonable care to maintain it in a reasonably safe condition for travel. The Doehrings maintain that under § 367, the Wagners, as possessors of the right-of-way [3] should have known that motorcyclists would reasonably have believed it to be a public road since they frequently used it without reprimand, and since it was paved. Under this theory, the Wagners are therefore subject to liability for the decedent's death which occurred during his use of the right-of-way.

As the Doehrings recognize, § 367 is intended for application only to situations where either a private road branching off a public highway is so constructed that persons traveling on the highway would reasonably regard it as a continuance of the highway, or where a possessor of land has paved a strip of his land adjoining a public highway so that it appears to be a part of the highway. Restatement (Second) of Torts at § 367 comment c. For reasons we shall explain, we do not adopt this authority in this case.

■ The Court of Appeals has said on many occasions that the standard of care owed by an owner or occupier of land to an individual depends upon the status of that individual with respect to the land. *Rowley v. Mayor and City Council of Baltimore*, 305 Md. 456, 464, 505 A.2d 494 (1986); *Bramble v. Thompson*, 264 Md. 518, 521, 287 A.2d 265 (1972). Maryland courts have consistently rejected entreaties that we alter the common law classifications of invitee, licensee and trespasser. *See Murphy v. Gas & Electric Company*, 290 Md. 186, 195, 428 A.2d 459 (1981); *Sherman v. Suburban Trust Company*, 282 Md. 238, 247–49, 384 A.2d 76 (1978); *Mech v. Hearst Corporation*, 64 Md.App. 422, 430, 496 A.2d 1099 (1985). That decision lies properly within the discretion of the legislature. *See Casper & Kirtscher v. Smith*, 316 Md. 573, 584, fn. 8, 560 A.2d 1130 (1989); *Murphy*, 290 Md. at 195, 428 A.2d 459.

---

**3.** The Wagners' status as possessors of the right-of-way was finally determined by the Court of Appeals. *See Wagner,* cited *supra.*

■ Turning to those common law classifications, invitees are, generally speaking, those who enter an owner's property in connection with his business. *Crown Cork and Seal Co. v. Kane,* 213 Md. 152, 157, 131 A.2d 470 (1957). An invitation may be implied, however, from such circumstances as custom, the acquiescence of the owner in habitual use, the apparent holding out of premises to a particular use by the public, or simply in the general arrangement or design of the premises.[4] *Id.* at 159, 131 A.2d 470. We said in *Woodward v. Newstein,* 37 Md.App. 285, 293, 377 A.2d 535 (1977):

> [B]efore the status of invitee may be established by implication, there must be, in the conduct or words of the possessor, some inducement or encouragement to enter, and mere permission or acquiescence is not sufficient. As the Restatement points out in comment a. to § 332, *supra,* " 'Invitee' is a word of art, with a special meaning in the law. This meaning is more limited than that of 'invitation' in the popular sense, and not all of those who are invited to enter upon land are invitees." In determining the existence or not of an invitation in the legal sense, the Restatement goes on to point out that "the important thing is the desire or willingness to receive that person which a reasonable man would understand as expressed by the words or other conduct of the possessor." Restatement § 332, comment c.

"A licensee is one privileged by virtue of proper consent to enter another's property for his own purpose or convenience." *Kight v. Bowman,* 25 Md.App. 225, 229, 333 A.2d 346 (1975).

"A trespasser is one who intentionally and without consent or privilege enters another's property." *Id.*

In the case *sub judice* there was no indication that the decedent was expressly invited to drive his motorcycle over

---

4. These last two factors which deal with the appearance of the premises address the same concerns as Restatement § 367, which appellants would have us adopt.

the subject property, either by the Wagners, or by Shiling and Hess, the owners of the driveway, who had reserved a right for themselves to use it.[5] The Wagners were not aware of Doehring's use of the driveway on the night in question. The deposition testimony did show, however, that the Wagners were generally aware that young motorcyclists frequently drove up the driveway at high speeds, both day and night, and sometimes had parties alongside Singer Road near the driveway. The deposition exhibits showed that there were signs at the driveway entrance indicating that a dog kennel was at that location.

The trial court made no finding with respect to the alleged appearance of the driveway as a public road or continuation of Singer Road, given its macadam surface. In an appropriate case, the combined effect of an owner's acquiescence in the presence upon his land of strangers, plus affirmative findings as to the other factors enunciated in *Crown, supra* may have some impact on the status of an individual with respect to the owner's property. Although there was some evidence that the Wagners acquiesced in the decedent's use of the driveway, the other evidence does not suggest either inducement, encouragement, or an implied invitation from the Wagners for motorcyclists to use the driveway. Acquiescence in the unauthorized use of the driveway does not alone elevate the status of the unauthorized users to invitees. As we stated in *Crown, supra:*

It is well settled in Maryland that a licensor owes no duty to a licensee, except that, if aware of his presence, the licensor must not injure him willfully or entrap him. *Peregoy v. Western Md. R.R. Co.*, 202 Md. 203, 207 [95 A.2d 867 (1953)], and cases cited.... In *Carroll v. Spencer*, 204 Md. 387, 393 [104 A.2d 628 (1954)], it was held that a child playing in a house under construction, whose presence was known to the watchman, was not an invitee. It was said that "Acquiescence is not invitation,

5. There was no evidence to the effect that Shiling and Hess in fact ever used the driveway.

and at most, changes the status of the trespasser to that of bare licensee, to whom the owner owes no greater duty than to a trespasser." See also *Jackson v. Penna. R. Co.*, 176 Md. 1 [3 A.2d 719 (1939) ]. It was noted in the *Carroll* case that Maryland has followed what is known as the Massachusetts rule, which denies that an owner or occupier owes a duty to avoid negligent injury to a trespasser or licensee whose presence is known, rather than the Michigan rule favored by the Restatement.

*Crown*, 213 Md. at 157, 131 A.2d 470. The decedent in the case *sub judice* was owed no duty other than that owed a trespasser, "that he may not be willfully or wantonly injured ...", *Kight, supra* 25 Md.App. at 230, 333 A.2d 346. The grant of summary judgment was proper.

## II.

### The Wagners' Conduct

The Doehrings assert that the trial court erred in ruling that as a matter of law the Wagners' conduct in erecting the chain was not willful and wanton. They argue that since reasonable minds could differ on this issue, it should have been submitted to the trier of fact. We disagree.

There is a distinction between "willful" and "wanton" misconduct. Willful misconduct is performed with the actor's actual knowledge or with what the law deems the equivalent of actual knowledge of the peril to be apprehended, coupled with a conscious failure to avert injury. A wanton act, by contrast is performed with reckless indifference to its potentially injurious consequences. *See Evans v. Miller*, 8 Wash.App. 364, 507 P.2d 887 (1973).

The Maryland cases have generally looked to conduct of a more deliberate nature than that involved here, i.e., conduct calculated to or reasonably expected to lead to a desired result. *See Hensley v. Henkels & McCoy, Inc.*, 258 Md. 397, 265 A.2d 897 (1970) (stating generally that a licensor is liable for injuries a licensee sustains because of entrapment, concealment, or presentation of deceptive appearance). In

cases involving conduct similar to the Wagners', no liability was imposed. *See* e.g., *Mech, supra* (no liability imposed for injury to plaintiff by defendant's vicious guard dog where plaintiff mistakenly parked on private lot, not marked by warning signs and surrounded by a chain-link fence with a large open gate); *Hensley, supra* (no liability imposed on electric company for child's injuries caused when company employees began tightening slackened rope while child was swinging from it); *Carroll, supra* (no liability imposed for injuries sustained by child falling through open hole in partially finished house containing "for sale" signs, where child was trespassing).

Most compelling is the result in *Carter v. Baltimore Gas & Electric Co.*, 25 Md.App. 717, 336 A.2d 790 (1975), a case involving facts similar to those before us, except that the incident occurred during the day. There, the plaintiff drove his motorbike onto a driveway owned by the defendant utility company. The plaintiff struck a cable that had been strung across the driveway a few days earlier for the purpose of impeding ingress and egress of anyone except company agents and/or employees. For a year before the plaintiff's accident, he, as well as others, had habitually driven their motorbikes across the driveway, with the knowledge of company employees, and without objection. No warning signs were posted regarding the cable,[6] which was only ⅜ inch wide and described as "virtually invisible." After reviewing the proper standard of care owed a bare licensee, we rejected the claim that the defendant's conduct was willful and wanton. We explained:

Nowhere did the appellants specify to the court any fact, in the form of evidence or its equivalent, which showed or permitted an inference that the act of the Company in erecting the cable across the driveway was motivated by a willful or wanton purpose to injure or entrap the infant plaintiff. The allegation amounts to no more than an unsupported conclusion. Indeed, they af-

---

6. For facts see 25 Md.App. at 718–19, 336 A.2d 790.

firmatively asserted that the sole purpose of the barrier was to impede the ingress and egress of known and unknown trespassers. They agreed that the Company was not aware of the infant plaintiff's presence on the property at the time of the injury.

In sum, appellants' opposition to the motion is founded entirely upon unsworn allegations, and upon their view of the law. They cannot succeed upon either, even if the mere alleging of facts were taken as a proper way, on a motion for summary judgment, to show an issue of material fact.... By their own showing, the appellants negatived any malicious intent on the part of the Company to inflict an injury willfully or wantonly upon Robert, or to entrap him. On the contrary, they showed that the barricade was erected for a perfectly proper business reason. If they showed that it was done negligently it was not enough—the law would permit no recovery without a showing of intentional harm. The facts did not meet the test.

The summary judgment was properly granted.

*Id.* at 724, 727, 336 A.2d 790 (1975). We attributed no significance to the company's failure to post warning signs, or to the "virtually invisible" appearance of the cable or to the fact that the company was aware of frequent trespassing across the driveway by children. Except in the time of day that the respective accidents occurred, *Carter* and the case *sub judice* are virtually indistinguishable.

■ The Doehrings argue that "the appellees must have known that a motorcyclist would suffer extreme injuries or death if he struck the chain at a significant speed." Assuming, without deciding that such knowledge could be attributed to the Wagners, we will not hold that they must anticipate the manner in which a trespasser will choose to enter their right-of-way. They cannot be expected to anticipate that one will enter the driveway at a high speed, at night, wearing no helmet, and having no headlights on his vehicle.

The sole fact that the chain was erected is not evidence that the Doehrings intended to injure the decedent or to cause his death, and no other evidence of such an intent was offered below. As we said in *Carter:*

> If they [appellants] showed that it was done negligently it was not enough—the law would permit no recovery without a showing of intentional harm. The facts did not meet the test.

25 Md.App. at 724, 336 A.2d 790. On the facts of this case, a jury could reasonably find no more than that the Wagners were negligent in erecting the chain, which as *Carter* recognizes, precludes any recovery by the Doehrings because the decedent was no more than a trespasser. We concur in our reasoning in *Carter* and we find as a matter of law that the Wagners' erection of the chain was neither willful nor wanton.[7]

■ Even if we were to assume *arguendo* that young Doehring were not a trespasser, but was an invitee, and therefore the standard upon which to base a holding against the Wagners would be simple negligence, we would have found, as a matter of law, that the action of Doehring in driving a motorcycle at a high speed, at night, without a helmet and without headlights, was clearly contributorily negligent. *See Reiser v. Abramson,* 264 Md. 372, 378, 286 A.2d 91 (1972) (holding that in order to find contributory negligence as a matter of law, there must be "some prominent and decisive act which directly contributed to the accident and which was of such a character as to leave no room for difference of opinion thereon by reasonable minds"); *see also Robertson v. Shell Oil Company,* 34 Md.App. 399, 404–05, 367 A.2d 962 (1977); *Dix v. Spampinato,* 28 Md.App. 81, 106, 344 A.2d 155, *aff'd,* 278 Md. 34, 358 A.2d 237 (1975).

---

**7.** Although not at issue in the case *sub judice,* the defense of contributory willful and wanton conduct, i.e., recklessness finds support in the Restatement of Torts 2d § 503 (1965).

JUDGMENT AFFIRMED; COSTS TO BE PAID BY AP-
PELLANTS.

ALPERT, Judge, dissenting:

I respectfully dissent from the majority's conclusion that,
as a matter of law, appellee's actions of erecting a chain
across their right-of-way at night without any warning
signs or reflectors does not constitute willful or wanton
misconduct.

As the majority notes, the function of a summary judg-
ment procedure is not to try the case or decide the issues of
fact raised, rather it is merely to determine whether there
are issues of fact to be tried and if there are none, to render
judgment. *Brewer v. Mele*, 267 Md. 437, 298 A.2d 156
(1972); *DeGroft v. Lancaster Silo Co.*, 72 Md.App. 154, 527
A.2d 1316 (1987). In that regard, all disputed facts and
inferences should be viewed in a light most favorable to the
party against whom the motion is made. *King v. Bankerd*,
303 Md. 98, 492 A.2d 608 (1985).

In the case *sub judice*, it was disputed whether the chain
had any reflectors or other warning devices on it, and
whether there were any "no trespassing" signs in the area
indicating the road was located on private property. Thus,
these disputed facts, when viewed in a light most favorable
to appellant, establish that there were no reflectors or other
warning devices on the chain and that there were no "no
trespassing" signs posted. In my opinion, a reasonable jury
could find that the Wagners' actions of erecting this chain
across the road at night without warning signs or devices
constitute willful and wanton misconduct.

While *Carter v. Baltimore Gas & Electric Co.*, 25 Md.
App. 717, 336 A.2d 790 (1975), a case relied upon by the
majority, is factually similar to the case at bar, there are
facts there that distinguish it from the instant case. In
*Carter*, the accident occurred in broad daylight, whereas
here, the accident occurred close to midnight when visibility
is diminished due to darkness. In addition, in *Carter*,

unlike the situation here where no signs were posted, "no trespassing" signs *were* posted on the property indicating that it was private property owned by the Baltimore Gas and Electric Company.

The Court of Appeals, in *Bramble v. Thompson,* 264 Md. 518, 526, 287 A.2d 265 (1972), agreed with the following statement taken from *Woodbridge v. Marks,* 17 A.D. 139, 45 N.Y.S. 156, 160 (1887):

> A spring gun is more than likely to take human life. It is placed, not for the purpose of warning others off, but with the design to do them great injury, even if life is not taken should they come in contact with it.... A dog gives notice of his presence and attack. A spring gun kills without any notice whatever.

Here William E. Doehring, Jr. was killed without receiving any warning whatsoever of the presence of the chain across the road. An invisible chain, like a spring gun, "is placed not for the purpose of warning others off, but with the design to do them great injury...." Without an appropriate warning device, the chain could only serve as a trap for the unwary. Unseen, it could not warn; it could only seriously injure or kill.

Several courts in other jurisdictions facing fact patterns similar to the instant case have held that the granting of summary judgment was improper. For example, in *Krevics v. Ayars,* 141 N.J.Super. 511, 358 A.2d 844 (1976), a motorcyclist was riding on a motorbike trail on defendant's property near dusk when he struck a cable. The cable was indistinguishable from the surrounding woodlands, and the defendant had failed to post any warning signs. The court held that summary judgment was improper because the defendants' action of erecting the cable was willful and possibly malicious. *See also Yeske v. Avon Old Farms School, Inc.,* 1 Conn.App. 195, 470 A.2d 705 (1984) (Plaintiff was injured when he rode his motorbike into an unseen cable on defendants' property. The court held that whether defendants' action of erecting the cable gate with no warning devices constituted willful or wanton misconduct was

for the jury to determine); *Moore v. The Ohio Oil Co.*, 241 Ill.App. 388 (1927) (The court ruled that the case be submitted to a jury on the ground that the defendant had knowingly permitted the use of the road, and his erection of the cable across the roadway without warning made the road more dangerous); *see also Estate of Thomas v. Consumers Power Co.*, 394 Mich. 459, 231 N.W.2d 653 (1975), *modifying* 58 Mich.App. 486, 228 N.W.2d 786 (Plaintiff's allegations that the defendant knew of the power company's unmarked guy wires and the threat therefrom to snowmobiles permissibly using the land was sufficient to give rise to a cause of action based on gross negligence so as to withstand summary judgment).

Because reasonable minds could differ as to whether the Wagners' conduct was willful and wanton, I would reverse and remand the case to allow a jury to determine the issue.