**Maureen WALSH**

v.

**AVALON AVIATION, INC., et al.**

**No. Civ. S 00–328.**

United States District Court,
D. Maryland.

Oct. 31, 2000.

Albert Thomas Morris, Kirkpatrick & Lockhart, LLP, Washington, DC, for Plaintiff.

Robert L. Ferguson, Jr., Ferguson, Schetelich Heffernan, P.A., Roderick R. Barnes, Freishtat & Sandler, Baltimore, MD, Mark A. Dombroff, Dombroff & Gilmore, P.C., Washington, DC, Patrick G. Cullen, Law Office, Baltimore, MD, Gene Rambo, Dombroff & Gilmore, Harold Eugene Rambo, Jr., Pangia & Hansen, Washington, DC, Leonard C. Redmond, III, Law Office, David S. Scott, Scott & Scott, Baltimore, MD, for Defendants.

## MEMORANDUM OPINION AND ORDER

SMALKIN, District Judge.

This diversity case arises from the crash of a single-engine aircraft (a Piper PA 28–140) on attempted take-off from runway 06 at the Potomac Airfield in Fort Washington, Maryland, near the District of Columbia. It is alleged that the aircraft was occupied by one Hank Griffioen, a certified flight instructor for Avalon Aviation, who was in the process of giving dual instruction to a student, one Nick Short, familiarizing him with instrument flight rules. Maureen Walsh was riding along on the flight as a passenger, with the OK of Griffioen and Short. After back-taxiing for departure on runway 06, the plane, the flight controls of which were being manipulated at the time by Griffioen (according to the present (third amended) complaint), attempted to depart runway 06, but was unable to gain sufficient altitude to clear trees at the departure end of the runway. The plane's wing allegedly "clipped one or more trees located at an unsafe distance from the end of runway 06," which, according to the complaint, caused the plane to spiral down to a fiery crash, in which Walsh was severely injured. It is further alleged that Griffioen had marijuana in his system at the time.

This matter is now before the Court on the motion of the owners of the land adjacent to the airfield—and on which the trees were situated—to dismiss the present complaint as to them. The motion is made pursuant to Fed.R.Civ.P. 12(b)(6). Although the plaintiff's opposition and the defendants' reply were accompanied by exhibits outside the pleadings, the Court has not considered them in adjudicating the present motion, which it has treated only as one attacking the legal sufficiency of the complaint, and not as a motion for summary judgment. The issues have been briefed, and no oral hearing is needed. Local Rule 105.6, D.Md.

The present complaint charges the landowners with breach of the duty they allegedly owed to Walsh and to others using the airport, by maintaining trees on their property that were too tall in light of their proximity to the departure end of an active runway. The plaintiff, citing, *inter alia,* a provision of the Code of Maryland Regulations (COMAR) that calls upon landowners bordering airports to keep trees from growing to a height that constitutes a hazard to air navigation at or near any airport, as well as federal and state statutes and regulations defining navigable airspace and calling for keeping it clear of obstructions, claims that these landowners

were negligent in failing to cut the trees, alleging that they had actual notice of the hazard the trees posed to aircraft. No oral hearing is needed on the present motion. Local Rule 105.6 (D.Md.).

The Court has found no Maryland appellate decision on point. Of course, in the absence of applicable precedent from the Court of Appeals of Maryland, or, in some cases, from the Court of Special Appeals, *see Assicurazioni Generali S.p.A. v. Neil,* 160 F.3d 997, 1002–03 (4th Cir.1998), this Court must forecast the result that would be reached by the Court of Appeals of Maryland, were the question put to it. *Wilson v. Ford Motor Co.,* 656 F.2d 960 (4th Cir.1981).

Maryland has adhered strictly to a traditional classification of non-owners upon land with respect to the duties owed them by landowners, which range from the duty to use reasonable care to the duty to refrain from wilfully or wantonly injuring them. *See, generally,* 16 *Maryland Law Encyclopedia* (MLE), Negligence, sections 29–54 (West, 1999). The traditional classification of Ms. Walsh as a trespasser or bare licensee—which would not carry with it any duty on the part of the landowners to use reasonable care—is not, at first blush, apt for the factual scenario presented by this case, as, of course, the common law did not quite envision the situation of one whose initial contact with the land (or trees or structures affixed to it) is while occupying a flying machine. Here, of course, the actual setting of foot by Ms. Walsh upon the land itself did not occur until the plane impacted the ground. Certainly, at that point, under Maryland law, the landowners did not owe her the duty of reasonable care, because she did not fit into the rather limited, traditional category of entrants upon land, *i.e.,* invitees, to whom such a duty is owed. *See,* MLE, *id.*

The crucial question—determinative of the level of duty owed them by the landowners—is the status of Ms. Walsh and the plane's other occupants when the plane, still airborne and arguably operat-

ing within the approach/departure profile for Runway 06, part of the navigable airspace of the United States, contacted the neighboring trees in its failed attempt to take off.

■ The Supreme Court has analogized the navigable airspace of the United States to a public highway. *See United States v. Causby,* 328 U.S. 256, 260–61, 66 S.Ct. 1062, 90 L.Ed. 1206 (1946). Vintage Maryland cases hold that "an owner of property abutting on a highway is under an obligation to use reasonable care not to endanger travellers on the highway by objects so located on his premises that they are likely to cause injury." *Stottlemyer v. Groh,* 201 Md. 414, 421, 94 A.2d 449 (1953). There appears to be no distinction drawn between natural and man-made objects in *Stottlemyer.* It seems, then, that if the *Causby* "highway in the sky" model of airspace were applied to the cases from the Court of Appeals of Maryland dealing with the duty of landowners to travelers on adjacent highways, that Court would impose a duty of reasonable care on landowners whose trees project into it. In such a case, the present complaint would state a claim that could not be dismissed under Civil Rule 12(b)(6), as it would be factbound, involving the duty of reasonable care.

■ The matter is not, however, so simple as analogizing the airspace in question to a public highway. As the Supreme Court recognized in the *Causby* case itself, that analogy is imperfect, because, notwithstanding the public's right of aviation, to the landowner is reserved the "exclusive control of the immediate reaches of the enveloping atmosphere. Otherwise buildings could not be erected, trees could not be planted, and even fences could not be run." *Causby,* 328 U.S. at 264, 66 S.Ct. 1062. The Court went on to hold, that, at least with regard to landowner conduct affecting "superadjacent airspace at ... low altitude [that] is so close to the land that continuous invasions of it affect the

use of the surface of the land itself," an easement is required expressly to be taken by the Government for aviation operations at that low altitude. *Id. at* 265, 66 S.Ct. 1062. If there is no easement, then invasions of very low airspace "are in the same category as invasions of the surface." *Id.*

This thread was picked up recently in the case of *County of Westchester v. Town of Greenwich, Connecticut,* 76 F.3d 42 (2d Cir.1996), in which the court dealt with a public nuisance claim against various landowners in Connecticut who had trees intruding into the airspace used for landing and takeoff for runway 11–29 at the Westchester County Airport. Upon detailed analysis, including a close reading of *Causby, supra,* the Second Circuit essentially concluded that it was up to the airport operator to secure easements to preclude its neighbors from growing tall trees limiting the amount of runway that can safely be used for landing and takeoff. In so doing, the court expressly refused to apply, to owners of airspace immediately adjacent to the airport, the common law rules (the same in Connecticut as in Maryland) applicable to owners of property adjacent to highways:

> We may assume a parallel for many purposes between roadways and frequently used airspace. However, we believe that the relationship of a landowner to an injured traveler on a public road involves a very different balancing of interests than that involved in the relationship of an airport to neighboring property owners.
>
> Many roads were located where they are long before the invention of fast-moving automobiles created the problem of dangerous obstructions of view on private property. Users of public roads have a strong interest in clear fields of vision. However, as a practical matter, travelers cannot cause government to prohibit such obstructions or negotiate with fronting landowners for removal. More important, the vegetation or structures on private land that obstruct a

traveler's view of the road generally involve a very small portion of the property and are not fundamental to the owner's use of the land. In the usual case, the landowner may need to do no more than remove one shrub or tree from a corner or curve.

> In the airport/landowner case, the practical problem of airspace over a runway approach existed when the airport was constructed. New technology has altered, but not fundamentally changed, the need for such airspace. Those who wish to build or operate an airport can negotiate with adjoining landowners before going ahead with the project. This ability is recognized by FAA rules governing the clear space necessary to a runway approach....
>
> In addition, a claim that ordinary forestation or structures on land intrude on airspace of a runway approach will ... frequently have a very substantial effect on an adjoining landowner's use of land.... We therefore find that the Connecticut cases allowing injured road travelers to bring public nuisance claims against obstructing landowners are inapposite.
>
> We agree with the district court that Westchester failed to raise a triable issue regarding the reasonableness of appellees' use of their land.

*County of Westchester,* 76 F.3d at 46–47.

■ Although *County of Westchester* involved a public nuisance claim, it is clear from the concluding sentence quoted above that the bottom-line question was one of the landowners' reasonableness in the use of their property. The Second Circuit declined to submit the question of reasonableness to the trier of fact, thereby declining to impose a reasonableness-in-fact overlay on the question of impinging trees adjacent to runway ends. In the analogous context of this case, which involves a claim in tort for individual injury, reasonableness on the part of the landowners translates to the duty of ordinary and reasonable care, *i.e.,* negligence. For the rea-

sons stated by the Second Circuit, this Court, also as a matter of law, must decline to impose a duty of reasonable care on the landowners with respect to trees bordering the ends of runways.

 Thus, in the words of *Causby*, aviators who operate at low altitude over, or contact, trees on departure from an airport are making "invasions" of the landowners' property that "are in the same category as invasions of the surface." *Causby*, 328 U.S. at 265, 66 S.Ct. 1062. Those who "invade" another's property in Maryland are trespassers, or, at best, licensees. To trespassers, the landowner owes only the duties of not entrapping them and of refraining from willfully or wantonly injuring them; to "bare licensees" (those on the property for their own purposes, but with permission of the landowner) is only owed the duty to refrain from willful or wanton injury and from creating "new and undisclosed sources of danger." *See, e.g., Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 689, 705 A.2d 1144 (1998); *Doehring v. Wagner*, 80 Md. App. 237, 244, 562 A.2d 762 (1989). (Obviously, this case raises no question of entrapping the plaintiff or of creating new, undisclosed perils.)

 Because the trespasser/licensee takes the property as she finds it, the landowner has no duty to keep the property in a safe condition, to anticipate the plaintiff's presence, or to warn her of dangerous conditions. MLE, *supra*, at section 52. Certainly, the landowners' conduct in this case could not possibly be characterized as willful or wanton under governing Maryland law. *See, e.g., Doehring v. Wagner*, 80 Md.App. 237, 246-48, 562 A.2d 762 (1989) (noting that willful or wanton misconduct usually involves conduct of a "more deliberate nature ... calculated to or reasonably expected to lead to a desired result"). Furthermore, even a landowner's violation of a statute or ordinance (here, the COMAR provisions regulating tree heights on property adjacent to runways, if given the dignity of a statute or

ordinance, a question that need not be directly answered here) confers no right of action on a trespasser, or, by logical extension, a bare licensee. *State v. Longeley*, 161 Md. 563, 569-70, 158 A. 6 (1932).

If the Court might be permitted a personal observation: As an experienced pilot who has conducted many flights into and out of small, uncontrolled airfields, often with trees close to the ends of the runways, the undersigned might wish to have reached a different result, because the presence of tall trees in the proximity of a runway obviously makes flight operations—both take-offs and landings—more difficult and hazardous. But, the Court also is mindful that the primary responsibility for all aerial operations, including ascertaining the presence of, and maintaining clearance from, obstacles, is that of the pilot in command. *See* 14 C.F.R. (FAR) 91.3(a). Indeed, for each flight, the pilot in command is specifically responsible for familiarizing himself with takeoff and landing data for the aircraft, which always includes consideration of obstacles in the departure or approach path. *See* FAR 91.103(b). Thus, there is no undue harm done to the aviating public by a holding that refuses to pin liability on owners of trees near the airport—even in the approach/departure path—when an airplane has been so operated as to impact them because of a failed attempt to depart, or an approach that was insufficiently steep to avoid such obstacles.

In that the third amended complaint fails to set forth facts showing that the landowners violated the applicable standard of care as the Court has determined it, the landowner defendants' motion to dismiss is hereby GRANTED, as to those defendants only, for failure to state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b)(6).